IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **06-cv-02004-JLK-BNB**

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,**

 Plaintiff,

v.

**DANYELLE HARRIS, and**
**THOMAS OWENS, individually,**

 Defendants.

___

MEMORANDUM OPINION AND ORDER
___

Kane, J.

 This insurance declaratory judgement action arises over a coverage dispute for a brain injury suffered by Thomas Owens after being struck by his own car and falling. At the time he was struck, the vehicle was being driven by Danyelle Harris, the niece of Plaintiff's insured. Given the severity of Owens' injuries, payments from his own insurer did not fully compensate him for his medical bills and ongoing losses. Owens therefore filed suit against Harris in state court, seeking coverage from her and her uncle's insurer, American Family, based on the fact that Harris was living in her uncle's home at the time of the incident.

While Owens's state court action was pending, American Family filed this instant declaratory judgment action in federal court, seeking a determination of noncoverage and nonliability for any of Owens' injuries arising out of the incident.[1] Specifically, American Family seeks a determination that Harris is not entitled to coverage under any of the uncle's American Family automobile, homeowner's, or umbrella insurance policies. Owens, named by American Family as a co-defendant with Harris, asserts a counterclaim for the opposite declaration, i.e., that Harris *is* entitled to coverage under one or more of the uncle's policies. The matter is before me on the parties' cross-motions for summary judgment.

Given the case-dispositive nature of the motions, I held oral argument on them on August 16, 2007. Considering the parties' arguments, together with the briefs and relevant case law cited therein, I issue the following opinion granting the motions in part and denying them in part as follows.

## I.  FACTS AND PROCEDURAL HISTORY

On March 18, 2005, Thomas Owens and Danyelle Harris were riding together in a vehicle owned by Owens. Harris was driving; both were intoxicated. At some point, Owens determined Harris should not be driving and asked her to pull over. Owens walked around to the driver's side to ask for the keys. Harris refused, put the car in reverse,

---

[1] Ms. Harris has not appeared in this action and default has been entered against her.

2

striking Owens with the car as she attempted to pull away.  Owens fell, suffered a trauma to the head, and was knocked unconscious.

At both the scene of the accident and the hospital, Harris provided misinformation to medical personnel as to the nature of Mr. Owens' injuries. Specifically, Harris failed to disclose that Owens had been struck by the vehicle and denied, when asked directly, that Owens had fallen or suffered any trauma.  As there were no other witnesses to contradict Harris and because Owens displayed no obvious signs of injury, medical staff initially treated Owens only for intoxication and not for the head injury eventually discovered. According to Owens' expert, the delay in treatment, combined with the administration of a contra-indicated treatment for intoxication, was "responsible for the severity of the brain injuries and permanent impairment that Owens suffered." Exhibit A, Aff. of J. Ramos page 5 ¶ 23.

For purposes of the insurance coverage issues raised, it is undisputed that at the time of the accident, Harris lived with her uncle, Michael Thiel, the named insured on three policies – an automobile, a homeowner's and an umbrella – issued by American Family.  All of the policies extend coverage to resident relatives of the named insured, however each contains significant exclusions.  The automobile policy, for example, defines  "relative" to exclude coverage for "any person who owns, or whose spouse owns, a motor vehicle . . ." Exhibit 2, Auto Policy, Definitions p. 1 § 7; Part 1- Liability.  The homeowner's policy excludes coverage for injuries "arising out of the ownership,

supervision, entrustment, maintenance, operation, use, loading or unloading of any type of motor vehicle," as well as for injuries "caused intentionally by . . . any insured." Exhibit 4, Home Policy, Exclusions- Section II, p.11 §§ 10, 16.  The umbrella policy extends coverage only where liability is first found under either of the other policies. Exhibit 3, Umbrella Policy, Liability Coverage, p. 1.

At the time of the accident, Harris held legal title to a 2001 Kia Sephia but no longer had the vehicle in her possession.  According to Harris, the vehicle was in the possession of a friend, the two had discussed a sale agreement and Harris had asked her friend to register the car. Although Harris never reported a theft, she contends that at a certain point she considered the vehicle stolen because she was unable to contact her friend for its return or for payment.

After the accident, Owens filed suit against Harris in state court, alleging Harris negligently caused his injuries and breached her duty to render aid.  As previously set forth, American Family initiated the instant action seeking a declaration that it is not liable to provide coverage for Owens's injuries under either Thiel's automobile, homeowner's, or umbrella insurance policies.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted, pursuant to Federal Rule of Civil Procedure 56, when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Scott's Liquid Gold, Inc. v. Lexington Ins. Co.*,

293 F.3d 1180, 1183 (10th Cir. 2002). An issue of fact is genuine when "a fact finder could resolve the issue in either party's favor." *Id.* The legal standard does not change because parties file cross motions for summary judgment. *See Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 ("[T]he fact that both parties have moved for summary judgment does not permit the entry of a summary judgment if disputes remain as to material facts."). However, cross motions for summary judgment "allow courts to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Id.*

### III. DISCUSSION

#### A. Preliminary Questions

##### *1. Standing.*

American Family argues Owens, as an injured third party, is not entitled to assert claims directly against the insurer. The Colorado Supreme Court has held that a court "may not provide declaratory relief to a plaintiff who attempts to litigate the question of the limits of an alleged tortfeasor's insurance coverage prior to the judgment against the tortfeasor." *Farmers Ins. Exch. v. District Court*, 862 P.2d 944, 949 (Colo. 1993). Actions for declaratory judgment should resolve cases in which there is an existing controversy, "not a mere possibility of a future legal dispute over some issue." *Id.* at 948-949 (quoting *Board of County Comm'rs, v. Bowen/Edwards Assoc.*, 830 P.2d 1045 (Colo. 1992)). This, however, is not the full statement of the Court which, in a later decision,

clarified that when an insurer initiates action and names its insured and the injured party as defendants, that injured party, *once joined by the insurer in an action for declaratory relief*, may fully participate in that action. *Constitution Assoc. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996) (reviewing two cases: *New Hampshire Ins. Co. v. Constitution Assoc.*, 908 P.2d 684 (Colo. App. 1995), and *Connecticut Gen. Life Ins. v. A.A.A. Waterproofing, Inc.*, 911 P.2d 684 (Colo. App. 1995)). Owens has standing to pursue his counterclaim for declaratory relief in this action initiated by American Family against him and the niece of its insured.

### *2. Reliance on Superseded Complaint.*

I reject without serious discussion Owens's assertion that American Family's Motion should be denied because it is directed to Owens's original, rather than amended, complaint in the underlying state action. The parties argue about whether the amended complaint had been filed at the time American Family initiated the instant action in federal court, but no matter. Owens's amended complaint did not alter, in any meaningful way, the factual averments on which American Family's summary judgment arguments are based. Specifically, and while Owens changed his "negligent misrepresentation" claim against Harris to one premised on alleged violations of the "duty to aid another harmed by [the] actor's conduct," both claims are premised on Harris's statements and misstatements to medical personnel the night of the incident. American Family relies on those averments to argue Harris's conduct falls within coverage

exclusions for intentional conduct under their insured's homeowner's policy, and American Family's arguments are not barred or otherwise precluded by the recasting of Owens's claims.

### B. Coverage under the automobile and homeowner's policies

American Family concedes Harris was a resident relative of its insured at the time of the incident, but contends she falls within the automobile policy's "own car" coverage exclusion because she owns her own motor vehicle. With respect to coverage under Thiel's homeowner's policy, American Family contends Harris falls within both the "automobile" exclusion to coverage, because Owens's injuries arise out of an automobile accident and the "intentional act" exclusion, because they were the result of Harris's intentional misconduct in lying to medical personnel. Owens, by contrast, contends liability for his injuries should be covered under both policies, and, as a result, under the umbrella policy as well.[2]

Owens divides his injuries into two categories: those that occurred as a result of Harris's actions in hitting him with the car and those that occurred as a result of the delay in his treatment for his head injury. Owens rejects any contention that Harris is excludable from coverage under Thiel's automobile policy simply because she held title to a separate vehicle at the time of the incident that was not in her possession.

---

[2] The umbrella policy contains the same exclusions as both of the underlying policies and only extends when liability is found under those policies. For this reason, the umbrella policy need not be addressed through separate analysis.

Alternatively, Owens argues any interpretation of the "own vehicle" exclusion to deny Harris coverage for injuries she caused is void as contravening public policy. With respect to coverage under Thiel's homeowner's policy, Owens denies Harris's statements/omissions at the emergency room rise to the level of "intentional" acts excludable from coverage. I address these arguments seriatim.

### 1. Coverage under the Automobile Policy - The "Own Vehicle" Exclusion.

A determination of coverage under Thiel's auto policy rests on the application and/or validity of the policy's own-vehicle exclusion. American Family contends possession of title constitutes irrebutable proof of ownership such that American Family is entitled to summary judgment on the question of whether Harris was excluded from coverage as a resident relative of Thiel's because she owned her own vehicle. Owens contends "ownership" under Colorado law entails more than the mere possession of title and, relying on Harris's testimony that she had relinquished ownership of the vehicle to her friend, argues that *he* is entitled to summary judgment in favor of coverage or, at a minimum, that the question of ownership is not amenable to resolution on summary judgment and may only be resolved by the jury after a trial.

(a) <u>Vehicle ownership</u>.

Legal title, or lack thereof, can, but need not always, denote ownership of a vehicle. *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001) (individual who transferred title to a vehicle to avoid an IRS lien, but still possessed and

regularly used the car, remained the car's "owner"); *Martinez v. Allstate Ins. Co.*, 961 P.2d 531, 533 (Colo. App. 1997) (holding possession of legal title "does not represent conclusive proof of ownership . . . . [r]ather it evidences only a rebutable presumption of ownership"). In *Martinez*, the court rejected plaintiff's claim that his sister was the owner of a motorcycle simply by virtue of holding title, considering intent, possession, use, and enjoyment as factors that could rebut the presumption of ownership. *Id.*  Because Martinez transferred title to avoid a property dispute with his wife and maintained sole possession, use and enjoyment of the motorcycle, the court found Martinez was the motorcycle's owner, and not his sister, to whom he had transferred title. *Id.*

In *Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781, 783 (Colo. App. 2000), by contrast, the Colorado Court of Appeals rejected the plaintiff's assertion that he could not be deemed the owner of the vehicle at issue because he had not registered the vehicle. Because the plaintiff had title to the vehicle, the court concluded the plaintiff's belief that he was not the owner because he had not yet paid the prior owner, or registered the vehicle, was not enough to rebut the presumption of ownership created by legal title. *Id.*

While these cases largely cut against Owens's assertion that Harris was not the "owner" of the Kia Sephia to which she held title, they do not support entry of summary judgment against him.  To the contrary, by standing firmly for the proposition that title, alone, is not conclusive evidence of ownership, the cases support Owens's assertion that "ownership," in this case, is a question for the jury.

Owens presents evidence that Harris originally lent the car to her friend, but by the time of the accident had no control over the car concerning how or by whom it was used. Additionally, Owens contends Harris could not reach her friend to have it returned. Although she held title, Harris had neither possession, use nor enjoyment of the 2001 Kia. These facts, combined with her testimony that she intended to sell the Kia and maybe even believed it stolen, give rise to a sufficient dispute on the question of ownership to preclude summary judgment for either party.

(b)  Validity of "own-vehicle" exclusion as a matter of public policy.

As previously stated, Owens argues the entire "ownership" issue regarding the Kia Sephia is superfluous in this case because any application of the own-vehicle exclusion to deprive him of coverage is inconsistent with public policy. The argument is intriguing, but given my determination that "ownership" is a factual dispute in this case for the jury, I decline to issue a potentially unnecessary advisory opinion on the question now. If the jury determines Harris is the owner of the Kia Sephia as would render her excludable from coverage as a resident relative of Thiel's at the time of the incident, I may revisit the issue. Nevertheless, I offer the following initial impression and observation.

The Colorado legislature mandates that every owner of a motor vehicle purchase insurance coverage for certain statutorily required minimum amounts, C.R.S. § 10-4-619, 620, but allows individuals and insurers to bargain for conditions and exclusions to coverage, so long as they "are not inconsistent" with those statutory requirements. *Id.*, §

10-4-623(1).  As relevant to the facts of this case, "'[i]nsured'" is defined under the Colorado statute to include the "named insured [and] relatives of the named insured who reside in the same household as the named insured, C.R.S. § 10-4-601(5), and ""[r]esident relative'" is defined as "a person who, at the time of the accident, is related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household . . . ."  *Id.* § 601(13).

The automobile policy issued to Thiel by American Family grants liability coverage to an "insured person," defined consistent with statute to include a "relative," for bodily injury and property damage due to the use of a car.  The policy excludes from the definition of "relative" a person who "owns" a motor vehicle.  Undisputed Facts ¶ 10.[3]

American Family argues the exclusion is in keeping with public policy, ensuring that car owners have insurance as required by statute.  It further claims that to disallow the exclusion could create overlapping coverage in some cases. Owens asserts the exclusion is inconsistent with the statutory requirements.

The currently applicable statutory scheme governing automobile insurance in Colorado maintains the previously existing public policy pronouncement that "policy provisions that attempt to dilute, restrict, or condition the coverage required by [statute]

---

[3] American Family's suggestion to the contrary notwithstanding, the policy's exclusion for "bodily injury or property damage arising out of the use of any vehicle owned by any resident of the policy holder's household," Pl.'s Reply (Doc. 34) at pp. 4, ff., is inapplicable in this case and not the subject of Owens contrary-to-public-policy argument, as Owens was injured by his own car, and not the Kia Sephia arguably "owned" by Harris.

are void and invalid." *Finizio v. American Hardware Mut. Ins. Co.*, 967 P.2d 188, 190 (Colo. 1998) (citing *Winscom v. Garza*, 843 P.2d 126 (Colo. App. 1992)). Although *Finizio* dealt specifically with insurance mandated by the No Fault Act, since repealed, its analysis likely remains good law as the relevant legislative statements under the current Act remain substantially the same.  Under *Finizio*, "if a person seeking coverage is one for whom coverage is required by statute, an insurer cannot limit its statutory obligation by a contractual provision contrary to the requirements of the [statute]."  *Id.*

The insurance policy at issue in *Finizio* contained an exclusion precluding coverage to permissive users who were customers of the auto dealership. *Id.*  The No Fault Act, however, defined an "insured" to include any person using the vehicle with the permission of the named insured. *Id.* (citing Colo. Rev. Stat. Ann. § 10-4-703(6) (1997) (since repealed)). The court held the provision "improperly narrows" the coverage required by the Act by excluding from coverage a category of permissive users.  *Id.* (Liability coverage, pursuant to the plain language of Act, "*must* include, without exception, any person using the described motor vehicle with the permission of the named insured.")

 Similarly, here, the statutory scheme requires motor vehicle owners to obtain complying liability insurance, C.R.S. § 10-4-619(1) (2007), and defines "insured" expansively to include "relatives of the named insured who reside in the same household as the named insured." *Id.* § 601(5).  Under the *Finizio* reasoning, liability coverage must

include any person who is a resident relative of the named insured, without exception. Thus, it is at least arguable in this case that American Family's "own car" exclusion, to the extent it operates in this specific case to exclude Harris from coverage to the detriment of one she injured, improperly narrows the statutorily required coverage by excluding an entire category of resident relatives.

I note that my analysis concludes only in the observation that Owens's argument is colorable, not that it is correct. *Finizio* may be dispositively distinguishable on grounds that the category of excluded users in this case (resident relatives of the insured who own their own vehicle), unlike the category of excluded permissive users in *Finizio*, is specifically defined to comprise individuals for whom an independent statutory obligation to secure insurance coverage also applies. I leave the nuances of this issue for another day, if and when it is determined that Harris was, in fact, the "owner" of another vehicle at the time of the incident as would trigger the need for the analysis invited.

### *2. Coverage under the Homeowner's Policy*

Coverage under Thiel's homeowner's policy rests on a determination of whether Harris's misrepresentations (characterized in the Amended Complaint in quasi-negligence terms as "failure to give aid") fall within either the policy's "automobile" or "intentional acts" exclusions. If either is applicable, any injuries arising from Harris's statements or omissions to medical personnel on the night of the incident are not covered under the homeowner's policy.

(a)  Automobile exclusion.

The homeowner's policy issued to Thiel excludes coverage for any injuries "arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading, or unloading of any type of motor vehicle." Exhibit 4, Home Policy, Exclusions-Section II, p. 11 § 16.  American Family asserts that Harris's misrepresentations to medical personnel (regardless of how they are characterized) arose out of her use or operation of a motor vehicle and that coverage under the homeowner's policy is excluded. Owens, however, contends a portion of his injuries stem only from Harris's statements or omissions to medical personnel and give rise to liability entirely separate from the car accident.  Owens's argument is unpersuasive.

Owens refers to the Restatement of Torts to establish that failure to give aid is a distinct tort, independent from the original harm causing accident. *See* Restatement Torts 2d § 322. This proposition, however, does not refute the causal relationship between the original harm and the subsequent failure to give aid.  In fact, characterizing the claim as "failure of a person to render aid to one harmed by their [sic] conduct" further emphasizes that the subsequent omission can only arise out of the prior action which created the duty. Owen's Response and Cross Motion, p.11.

Additionally, Owens relies on two out-of-state cases to demonstrate the connection between the use of the car and the failure to give aid is too attenuated to support application of the coverage exclusion. *See Allstate Ins. Co. v. Watts*, 811 SW2d 833

(Tenn. Ct. App. 1991); *Nationwide Mut. Ins. Co. v. Davis*, 455 S.E.2d 892 (N.C. Ct. App. 1995). These cases are not controlling and are not in keeping with Colorado's case law on the issue.

In *Northern Ins. Co. v. Ekstrom*, 784 P.2d 320, 323 (Colo. 1989), the Colorado Supreme Court reasoned that "arising out of," in the context of an insurance policy exclusion, means to "originate from, grow out of, or flow from." *Id.* (citing *Azar v. Employers Case. Co.*, 495 P.2d 554, 555 (Colo. 1972)). Consequently, the court held that a "*but for"* causal test is appropriate to determine whether an injury "arises out of" the use of an automobile. *Id.*

In *Ekstrom*, the injured party sued an employer for negligent entrustment of the truck which hit her. 784 P.2d at 321. The court held this claim was excluded under the general liability policy because it arose out of the use of an automobile. *Id.* ("Since one element of a negligent entrustment claim must be the negligent use of an automobile, a claim for negligent entrustment of an automobile inextricably derives from . . . the use, ownership or operation of an automobile"). Though the injured party alleged two causes for her injuries (negligent operation of the truck and negligent entrustment), the court in *Ekstrom* held a claim is barred unless "it arises from non-automobile related conduct and is *independent* of any ownership, operation, or use of an automobile." *Id.* (emphasis added).

Owen's argument here is similar. One necessary element of Owens's claim for failure to render aid is the underlying harm, which created the duty to render aid in the first place. Because the underlying harm was caused by the negligent operation of the automobile, the claim "inextricably derives" from the use or operation of an automobile. Owens may assert two different causes for his injuries, but Harris's duty to aid arose out of her operation of the car, so her failure to render that aid is not independent of that operation.

In *Metropolitan Prop. and Cas. Ins. Co. v. Neubert*, 969 P.2d 733, 734 (Colo. App. 1998), a case involving automobile insurance, the claimant approached a vehicle to provide aid and was assaulted by its passengers.. The Colorado Court of Appeals held that the claimant's injuries arose out of the use or operation of a vehicle. *Id.* at 734, 735. The court reasoned that an injury arises out of the use of a car "if it is causally related to a conceivable use of the car that is not foreign to its inherent purpose." *Id.* at 734. Accidents and the need for assistance are the consequences of automobile use. *Id.* Consequently, "a person's rendering assistance to victims of a car accident is a foreseeable event arising out of the use of the vehicle." *Id.* at 735.

The court's reasoning in *Neubert* further clarifies the case at hand. Because providing aid is a foreseeable result of automobile use, the duty to do so in certain circumstances must be foreseeable as well. Both arise out of the use of an automobile. Thus, the creation of Harris's duty to provide aid and her subsequent breach arose out of

the use or operation of an automobile and the foreseeable consequences thereof and is not entirely separate or "independent of" any ownership, operation or use of the automobile. As a matter of law, Owens may not avoid the automobile exclusion in the homeowner's policy.

### (b) Intentional act exclusion.

Based on that determination, it is unnecessary to address American Family's further contention that Harris's acts in misrepresenting or omitting information about what happened to Owens are not covered under the homeowner's policy by operation of the "intentional acts" exclusion. In the interest of a full record and in the event of an appeal, I make the following observations:

The homeowner's policy excludes coverage for injuries resulting from intentional acts by the insured. Exhibit 4, Home Policy, Exclusions-Section II, p. 11 § 10. Under such policy exclusions, the insured must have intended the action and a resulting harm. *Butler v. Behaeghe*, 548 P.2d 934, 286-288 (Colo. App. 1976). American Family asserts that, as a matter of law, Harris intended to give false information to medical personnel and intended injury as a result. Owens argues in response that Harris's actions may have been intentional but the resulting injury was not, citing *Village Homes of Colo., Inc. v. Travelers Cas. & Sur. Co.*, 148 P.3d 293, 299 (Colo. App. 2006)("accident implies a misfortune and injury or damage to the victim, and not the negligent act that causes the

misfortune").[4]  While I would not substitute my own judgment for that of the finder of fact as to Harris's actual purpose in making the statements she did, I cannot agree that her purpose must be deemed, as a matter of law, to have been to harm Owens.

American Family relies on *Lopez v. American Family Mut. Ins. Co.*, 148 P.3d 438 (Colo. App. 2006) for the proposition that courts are willing to infer intent to harm in situations where a resulting harm is the inherent and ordinary consequence of a particular act.[5]  In *Lopez*, the court found that intent can be inferred when a person fires a BB gun into the back of another's head five times. *Id.* at 439, 440.  Intent to harm "can be inferred from the repetition of an act that the person knows will cause injury or harm." *Id.* at 439. Because firing a weapon five times does not support a claim of accidental discharge, the act fell within the intentional act exclusion of the homeowner's policy at issue. *Id.*

My own decision in *West Am. Ins. Co. v. Maestas*, 631 F.Supp. 1565, 1565 (D.Colo. 1986) falls into this same category of authority.  In that case, the insured bit off the ears and nose of the plaintiff during a fight. *Id.*  The plaintiff attempted to obtain compensation under the biter's homeowner's policy, which contained an intentional act exclusion, by construing the biting as negligent. *Id.* at 1565, 1566.  My perhaps pawkish

---

[4]     I do not find *Village Homes* particularly apt, however, as the Court of Appeals there was addressing whether coverage is required when the negligent act occurs within the policy period but the resulting accident did not occur until the policy had expired. 148 P.3d at 299.  It was not addressing the question of intent.

[5]     American Family also relies on *Troelstrup*, a case involving child molestation. *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415 (Colo. 1990). That case is not applicable here, because the court held that intent to harm must be inferred in *all* cases of sex abuse involving children, regardless of the circumstances. *Id.* at 419.

observation in *Maestas* was that, while one bite might be construed as accidental, "three bites do not a negligence case make." *Id.* at 1566.

Here, American Family argues intent to harm can be inferred from the repetitive nature of Harris's actions. Harris initially gave misinformation to medical personnel at the scene and repeated the misinformation both in the ambulance and at the hospital.  While Owens denies Harris's actions in misrepresenting what happened were made for the purpose of harming him, he concedes his injuries were the foreseeable and natural consequence of those actions. While it is, perhaps, a close call, I find the line of authority invoked by American Family distinguishable from the facts of this case and decline to apply them.  Unlike the case involving the repeated discharge of BBs into the skull of another or the triple mastication of body parts endured by Mr. Maestas where no other explanation (save the perpetrator suffering a seizure or some other out-of-body experience) other than an intent to harm may reasonably be divined from the repetition, the instant case involves a young woman who, while driving drunk, struck her friend with a car.  A ruling that her repeated efforts to avoid or minimize culpability under these circumstances is amenable to no other interpretation than an intent to harm Mr. Owens defies logic and I will not make it.  The obvious inference is that Ms. Harris's intent was directed toward saving her own skin, not harming Mr. Owens's.  Even if the question were properly before me, then, the assertion that Harris's actions are exludable from

coverage as intentional acts for the purpose of harming Mr. Owens would not be well received on summary judgment.

## IV.  **CONCLUSION**

Based on the foregoing, American Family's Motions for Summary Judgment (Doc. 19) is GRANTED in part and DENIED in part.  Because Owens presented sufficient evidence to create a triable question regarding the "own-vehicle" exclusion under Thiel's automobile policy, American Family is not entitled to summary judgment that coverage under that policy is precluded.  American Family is entitled to summary judgment on the question of coverage under Thiel's homeowner's policy, and I determine Harris's actions are excluded from coverage because they arise out of the use of an automobile.  Given the dispute regarding coverage under the automobile policy, American Family's Motion for Summary Judgment is denied as to coverage under the umbrella policy.

Owens's Cross-Motion for Summary Judgment (Doc. 27) is DENIED.

The parties shall file a Status Report within 14 days of this Order (on or before October 10, 2007) stating how they wish to proceed in light of the rulings made.  Should the parties desire a referral to a magistrate judge for settlement, it would be appropriate to do so in the Status Report.

Dated this 27th day of September, 2007, at Denver, Colorado.

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE